UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | NO. 23-cr-220(TJK) |
| § | |
| BRANDON BRADSHAW § | |

**DEFENDANT'S SENTENCING MEMORANDUM**

TO THE HONORABLE TIMOTHY J. KELLY, UNITED STATES DISTRICT JUDGE, FOR THE DISTRICT OF COLUMBIA, WASHINGTON, D.C.:

NOW COMES the Defendant, **BRANDON BRADSHAW,** by and through his attorneys of record, P. Mae Garza and Clarissa Fernandez Pratt, and files this Sentencing Memorandum, offering the Court as follows:

**I.**

On June 27, 2023, Defendant was arrested in this cause pursuant to a warrant and subsequent four count indictment alleging the following: Entering and Remaining in a Restricted Building or Grounds, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, Disorderly Conduct in a Capitol Building, and Parading, Demonstrating, or Picketing in a Capitol Building in the United States in violations of 18 U.S.C. § 1751(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G), all class A misdemeanors.

The Presentence Investigation Report ("PSIR") calculated a total offense level 9, and a criminal history category 1, resulting in an advisory guideline range of four to 10 months. PSIR ¶ 105.

Counsel believes this calculation is accurate and adequate, and that a term of imprisonment at the low-end of the calculated advisory guideline range would be sufficient to effectuate the goals

of sentencing under 18 U.S.C. § 3553(a). Defendant understands that the sentence is still within the sole discretion of the sentencing judge. We offer the following information in hopes that the Court will award a sentence no greater than probation, or downwardly vary and award a below guideline sentence.

## II. SENTENCING CONSIDERATIONS OF 18 U.S.C. § 3553(a)

In 2005, the U.S. Supreme Court struck down the mandatory nature of the U.S. Sentencing Guidelines. *U.S. v Booker*, 534 U.S. 220 (2005). Post-*Booker*, the Sentencing Guidelines are now an advisory tool the Court may consider, among other factors, in assessing an appropriate sentence. *Id*. Courts are guided by the statutory provisions of 18 U.S.C. § 3553(a), which requires imposition of "a sentence sufficient, but not greater than necessary" to achieve the goals of sentencing. The sentencing court has virtually unlimited ability to consider facts relevant to 18 U.S.C. § 3553(a) factors. *Gall v. U.S.*, 522 U.S 38 (2007). The sentencing judge may award a sentence outside the Guidelines, and are now asked to consider arguments that the applicable Guidelines: (1) fail to properly reflect § 3553(a) consideration; (2) reflect unsound judgment; (3) do not treat defendant characteristics in the proper way; or (4) that a different sentence is otherwise appropriate regardless of the Guideline range. *Rita v. U.S.*, 551 U.S. 338 (2007). Judges may also vary from an applicable Guideline range "based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. U.S.*, 552 U.S. 85, 101; *Rita*, 551 U.S. at 351.

It is with those facts in mind that we ask the Court to consider the following, pursuant to 18 U.S.C. § 3553(a):

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**

Though Defendant accepts full responsibility for the facts alleged in the Statement of Offenses in the Plea Agreement, he is pleading with the Court to allow him to serve probation as

opposed any prison time. Mr. Bradshaw is deeply remorseful and when he went to D.C. on January 6, 2021, it was with the intent to accompany his mother to hear the President speak.

As a supporter of then President Trump, Mr. Bradshaw's mother was going to travel alone by car to D.C. when he agreed to accompany her. At no time prior to the events that transpired on January 6, 2021, did Mr. Bradshaw intend to enter the Capitol. However, he soon became wrapped up in following the crowd through the broken window with the hopes of helping to control the situation. Upon reflection, Mr. Bradshaw can see that his actions contributed to the situation of people entering and remaining in a restricted building or grounds, namely the Capitol. Mr. Bradshaw's noteworthy efforts to disperse the crowd of rioters is evident from the Government's exhibits and the mannerisms displayed by the Capitol Police towards Mr. Bradshaw. ***See Defense Demonstrative Exhibit 1.***

Mr. Bradshaw has no criminal history and is a devoted and loving husband and father to his two children. He is the sole breadwinner for the family, as the managing member of Hugs Home Improvement, LLC, a company that gives back to the community by helping fallen families from San Antonio Police Officers and Firefighters with donations and services. His company offers jobs to previously homeless military veterans and he offers assistance with drug rehab/detoxification.

Mr. Bradshaw has strong ties to San Antonio as his entire family lives here and nearby to his own home. Mr. Bradshaw is ashamed and deeply disappointed in his actions and regrets them and more so how they have affected his family.

**(2) The need for the sentence imposed;**

18 U.S.C. § 3553(a)(2) provides that the Court should impose a sentence no greater than necessary to (A) to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Courts have generally treated subsection 3553(a)(2)(A) as the punitive or retributive component of § 3553(a). *See U.S. v. Tapia*, 564 U.S. 319, 325 (2011); *U.S. v. Miller*, 634 F.3d 841, 844 (5th Cir. 2011). 28 U.S.C. § 994(j) instructs the Sentencing Commission to ensure that "the Guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence of an otherwise serious offense." A sentence that is excessive in light of the seriousness of the offense works against the goals of sentencing, and may promote disrespect for the law in providing unjust punishment "without taking into account the real conduct and circumstances involved in sentencing." *Gall,* 522 U.S. at 54 (2007). The offense may be less serious in light of the "community view of the gravity of the offense" or "public concern generated by the offense." 28 U.S.C. § 994(c)(4), (5). As discussed above regarding the intent of Mr. Bradshaw, Counsel believes that a sentence within the Guideline range calculated in the final PSIR would operate to promote derision of the law—not from Defendant himself, but from those in the community who, as the Defendant's family wish to see Defendant return to their home and community.

Under § 3553(a)(2)(B), courts may consider not only specific deterrence as to the defendant, but also the deterrent effect a given sentence would have on the general public; however, empirical research has found that "increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al, *The Missing Link in General*

*Deterrence Theory*, 43 CRIMINOLOGY 623 (2005); *see also* Michael Tonry, *Purposes and Functions of Sentencing*, 34 CRIME AND JUST: A REV. OF RESEARCH 28–9 (2006) (noting that three Nat'l Academy of Science panels, along with every other major survey of the evidence, has found that lengthier sentences do not result in a greater deterrent effect). Counsel believes that a sentence of imprisonment would not achieve a desirable general deterrent effect, and would be far greater than necessary for specific deterrence in this cause.

Long periods of incarceration may have an adverse effect on recidivism for first-time offender because "when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism." Valerie Wright, *Deterrence in Criminal Justice*, THE SENTENCING PROJECT, at 7 (Nov. 2010). In fact, it has been recognized there is a negative impact on recidivism as to low-risk offenders sentenced to long periods of incarceration. *U.S. v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming a downward variance, justified in part by court's finding that prison would mean more to this defendant that one who has been imprisoned before). Given Defendant's strong family and community support system, including his family's assurances to help ensure Defendant's law abidingness in the future, his lack of criminal history, his long-term employment history, lack of violent propensity, age, and medical condition indicate that Defendant is highly unlikely to recidivate. Therefore, Counsel believes the recommended sentence provided in the final PSIR is much greater than necessary to protect the public from further crimes of the Defendant.

Section 3553(a)(2)(D) directs the Court to consider the potential rehabilitative aspects of any sentence to be imposed. *Tapia*, 564 U.S. at 325 (2011). Defendant has learned a hard lesson and understands the consequences of his actions and intends to avail himself of any rehabilitative

and education opportunities provided while in custody that Probation deems necessary. Further, Defendant and his family have made clear to Counsel that Defendant will make rehabilitation the focal point of his life going forward, both to guarantee compliance with conditions of supervised release in the future, and also to ensure he never again places himself or his family in this position. 18 U.S.C. § 3582(a) states that, though the court must consider the appropriateness of a sentence under § 3553(a), "imprisonment is not an appropriate means of promoting correction and rehabilitation." In 2005, the Probation and Pretrial Services Division of the Administrative Office of the U.S. Courts published a report entitled *Community Service Sentences* (CSS), which characterized community service conditions of probation and supervised release to be a meaningful and effective alternative to incarceration with respect to, among others, first time offenders, particularly where it may serve as a kind of "symbolic restitution" when, as here, the community is the victim.

**(3) The kinds of sentences available;**

The sentencing Court must consider all of the "kinds of sentences available," even where the "kinds of sentence [. . . ] established [by] the Guidelines" permit or encourage only prison. *Gall*, 552 U.S. at 59 & n.11 (2007). In the PSI, probation is specifically precluded by statute as to Count S1 of the indictment, the court has discretion to downwardly depart or vary to sentence Defendant to any term of imprisonment it deems appropriate in light of the sentencing factors referenced herein, notwithstanding any applicable mandatory minimum. Because the statute for which Defendant has pled is not among those where probation has been specifically precluded by statute, Counsel respectfully requests that the Court consider the information presented here and downwardly depart or vary to determine a more appropriate and less excessively punitive sentence in this cause.

**(4) The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant;**

As probation is not precluded by statute, probation is applicable. According to the final PSIR calculation of Defendant's total offense level, a total offense level 9, which places the Defendant well within the probation eligible zones A or B. Therefore, a sentence other than a sentence of imprisonment, in accordance with U.S.S.G. §5C1.1(b) or (c)(3) is generally appropriate, pursuant to U.S.S.G. §5C1.1, Application Note 10. In light of these considerations, we can only ask the Court to, upon contemplation of the sentencing options expressed above, award as lenient a sentence as possible.

**(5) Any pertinent policy statement;**

In *Rita v. United States*, Supreme Court Justice Stevens wrote in his concurring opinion:

> "Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. These are, however, matters that §3553(a) authorizes the sentencing judge to consider."

551 U.S. 338, 364 (2007) (internal citations omitted); *see also Gall*, 552 U.S. at 55–9 (approving consideration of defendant's youth, immaturity, and drug addiction in sentencing below Guideline range). The following is a discussion of those applicable factors and policy statements found in the U.S. Sentencing Guidelines:

USSG § 5H1.1. Age — This section provides that age, including youth, may be relevant in the court's decision as to the sentence it fashions. *See Gall*, 552 U.S. at 58 (2007). Here, Defendant is 42 years old. Given his age and great remorse and shame, Mr. Bradshaw is unlikely to pose a future danger to himself or society. Mr. Bradshaw and society at large would not benefit from his incarceration.

USSG § 5H1.2. Education and Vocational Skills — As evidenced in the PSI, Defendant is a business owner who put his knowledge and vocational capabilities to use for the good of his community.

USSG § 5H1.4. Physical Condition — A court may vary or depart downward based on the medical needs of a defendant. *U.S. v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (upholding a probation sentence despite a Guideline range of 27–33 months in light of the first-time offender's need to continue medical treatment with his psychologist); *U.S. v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) (upholding a sentence of three years of probation imposed for conspiracy to distribute cocaine rather than the 60-month Guideline term based on the 54 year old defendant's health problems and post-arrest rehabilitation). Here, the Defendant is in good physical condition and plans to stay healthy as he is the main source of income for his family. Further, his mother and father are of increase age and Defendant plans to be their caregiver when they are no longer able to be independent.

USSG § 5H1.5. Employment Record — As noted previously, Defendant has accumulated a stellar work record and the currently has a thriving business.

USSG § 5K2.0 — The court may consider awarding a downward adjustment based upon circumstances of a kind not adequately taken into consideration by the Guidelines. The court may also award the downward adjustment based upon a totality of factors that would, standing alone, be otherwise insufficient. Anything described in the Guidelines as a "departure" can also be framed as a "variance." DFCC, Vol. 2 at 17.06.03. The Court may still award a departure or variance under § 5K2.0 in light of one or any combination of the identified departure provisions or reason under § 3553(a). *See U.S. v. Robinson*, 741 F.3d 588, 599 (5th Cir. 2014). A district

court may also downwardly depart or vary where, as here, uncharged relevant conduct substantially increases the Guideline calculation. *U.S. v. White*, 240 F.3d 127, 136 (2d Cir. 2001).

The confluence of the various factors and other information provided herein demonstrates the lack of intent and remorse of Defendant's actions and subsequent consequences to his family, and taken in aggregate provide the basis for a significant downward adjustment. Taking into consideration all factors described herein and in the PSI, Counsel believes a significant downward adjustment would be appropriate.

**(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

Defendant, in comparison to other offenders is simply not a most serious offender sufficient to warrant a sentence at the absolute limit of what the law permits.

**(7) The need to provide restitution to any victims of the offense**

There is no individual victim in this type of offense, the victim here is the community itself. PSIR ¶ 1. Counsel argues that Defendant's decision not to contest the charges and take responsibility for his actions exemplifies the Defendant's character and sense of duty. If the Defendant is sentenced to incarceration, it is exponentially more difficult to realistically provide restitution to our community.

It is with this discussion of the enumerated factors of 18 U.S.C. § 3553(a) that Counsel respectfully requests a downward adjustment of the Guideline range in this cause to a sentence no greater than necessary to effectuate the stated goals of sentencing to include probation.

### III. CALCULATING THE GUIDELINE RANGE CONSIDERING THE TOTALITY OF CIRCUMSTANCES

In *Gall v. United States*, the U.S. Supreme Court upheld a sentence of probation where the sentencing judge downwardly varied from the guideline range of 30–37 months, despite no evidence of substantial assistance or government sponsored 5K1.1 motion for downward

departure. 552 U.S. 38 (2007); *see also United States v. Gall*, 374 F. Supp. 2d 758, 761 n.1 (S.D. Iowa 2005) ("The Government filed no substantial assistance motion in this case"). Both the Fifth and Ninth Circuit have upheld sentences of probation resulting from downward variances in cases without 5K1.1 motions for downward departure. *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008); *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009). Relying on the Fifth Circuit's opinion in *Duhon*, Hon. Fred Biery of the Western District of Texas, San Antonio Division, sentenced two defendants to probation *after trial*, departing from guideline ranges of 108–135 months and 70–87 months respectively. *United States v. Brewer*, 978 F. Supp. 2d 710, 712 (W.D. Tex. 2013). The Fourth Circuit has upheld a variance of 42 months in a case lacking substantial assistance or 5K1.1 motion for downward departure. *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007).

Those cases involved examining factors such as age, a lack of criminal history, otherwise model citizenry, etc. Defendant has many comparable characteristics as the Defendants in the above-referenced cases, as discussed herein and in the PSI—his particular characteristics and support system make recidivism highly unlikely, he has no criminal history, and he has been an otherwise model citizen throughout his life. **See Defense Exhibits 1, 2, and 3 attached.** In light of all the factors discussed herein, counsel requests that Defendant receive, a downward variance to a sentence at or near the applicable mandatory minimums. Counsel believes that this sentence requested herein adequately addresses the purposes of sentencing and notions of basic fairness.

**Wherefore, for all of the above reasons**, Defendant prays this Honorable Court grant the Defendant any possible leniency and relief.

          Respectfully submitted,

          */s/P. Mae Garza*
          Pauline Mae Garza
          Texas State Bar No. 24095705
          4100 NW Loop 410, Ste. 100
          San Antonio, TX 78229
          Tel: (210) 971-7991
          Fax: (210) 855-2149
          Email: mae@garzalawsatx.com

          Clarissa Fernandez Pratt
          Texas State Bar No. 24068964
          924 Camaron Street
          San Antonio, Texas 78212
          Tel: (210) 417-4590
          Fax: (210) 745-4239
          Email: lawyer@sanantoniojustice.com

## **CERTIFICATE OF SERVICE**

I, Pauline Mae Garza, do hereby certify that on the 20th day of February, 2024, electronically filed the foregoing with the Clerk of the Court CM/ECF system, and will send notification of such filing via e-mail to the following:

**Madison Mumma**
Trial Attorney-Public Integrity Section
Criminal Division-U.S. Department of Justice

          */s/ P. Mae Garza*
          Pauline Mae Garza

DEFENDANT'S DEMONSTRATIVE EXHIBIT 1

| STATE'S EXHIBIT | TIME | ILLUSTRATES |
|---|---|---|
| 1 | 14:01:56 | Brandon Bradshaw states the following: "We are not against you" "We love you" "We support the police" Brandon Bradshaw is being pushed toward the police by the crowd |
| 2 | | Brandon Bradshaw is being pushed (shown in slow motion) There is a hand on his back pushing him |
| 3 | 1:35 | Authorities telling the crowd to leave and disperse. Brandon Bradshaw is heard telling a man to calm down; he is not yelling at the police. |
| 4 | 14:21:32 | Brandon Bradshaw is being pushed into the officers and he yells at those pushing him "What's wrong with you," "They are out there doing their God damn jobs" (14:21:54) Brandon Bradshaw yells, "Stop" not at the police, but at the crowd. |
| 5 | | The crowd can be seen entering through the door |
| 6 | 4 seconds video | The crowd is pushing through the doors – see the Exit sign |
| 7 | 2:24 3:00 4:50 5:10 5:20 5:30 5:52 | This video is taken of the inside of the Capitol. Brandon Bradshaw claps his hands and says, "come on guys, let's go" "we did our jobs, let's go" "let's go guys" (and claps hands to indicate for crowd to leave) Brandon Bradshaw says "I appreciate you brothers" and shakes hands with the authorities. Some says "this guy has been helping" – talking about Brandon Bradshaw. An officer leans into Brandon Bradshaw and puts his arm around Brandon Bradshaw. Brandon Bradshaw puts his hands up to stop a man from reentering the Capitol. Brandon Bradshaw puts his arms out to escort people out. |

Page 1 of 2

|  |  |  |
|---|---|---|
|  |  | Brandon Bradshaw says "Come on guys, let's go" "We gotta get go." |
| 8 | 3:28 | Brandon Bradshaw is shown entering through the window on the left (right side if facing the Capitol).<br>Brandon Bradshaw is seen standing with the police shouting at the crowd, gesturing for people to leave. |
|  | 3:33 | Brandon Bradshaw can be seen shaking hands with authorities and shouting for people to leave; Brandon Bradshaw 's hand is on an officer's shoulder. |
|  | 3:35 | Brandon Bradshaw is seeing standing with the officers facing the crowd and he claps his hands and says "let's go."<br>Brandon Bradshaw is seen conversing with the officers. |
|  | 3:37:43<br>3:38:03<br>3:39:56 | Brandon Bradshaw is seen shaking an officer's hand.<br>Brandon Bradshaw shakes officer's hand and the officer pats Brandon Bradshaw on the back.<br>Another officer pats Brandon Bradshaw on the back; people trying to come back into the Capitol and Brandon Bradshaw is saying No – putting his hands up to prevent reentry of rioters. |

## EXHIBIT 1

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

BEFORE ME, the undersigned authority, on this day personally appeared PATRICK WAYNE TORRES ("Affiant"), who being by me first duly sworn, stated the following under oath:

1. "My name is PATRICK WAYNE TORRES, and I live at 535 Pipers Creek, San Antonio, Texas, 78250 I have personal knowledge of the facts stated in this Affidavit.

2. "I am the adoptive father of BRANDON BRADSHAW.

3. "Prior to January 6, 2021, my wife wanted to attend President Trump's speech in Washington, D.C. I did not want my wife to drive alone so we told Brandon and he agreed to accompany her. He never had the intention to go until my wife expressed a desire to go.

4. "Being the good son, he accompanied his mother to D.C. in the hopes of partaking in the speech.

5. "I know what Brandon did was wrong, entering and staying in the Capitol among the rioters; he acknowledges this too, but I want you to know the person I know and have known for more than 30 years. During those 30 years Brandon has shown humility, compassion, and respect. His actions on January 6th went against everything I have known him to be, and I know that at his core he deeply regrets his actions.

6. "Brandon is a kind, loving father, son, and brother. His heart is enormous. He hates to see poverty and homelessness, which is one reason he decided to go into business for himself so he could give people opportunities they would not otherwise have. His employees are veterans, recovering addicts, and homeless people. Pretty much, if you can show Brandon, you need a job and he feels he can trust you, he will hire you. Brandon takes on the marginalized citizens of our community and teaches them lifelong skills and provides them with steady income. Brandon gives his employees more than a job; he gives them hope.

7. "I am aware the prosecutor is requesting jail time, but I can assure you Brandon does not need jail time to deter him from ever doing this again. Brandon has no criminal history and this blemish on his record has affected him so deeply that he is ashamed of his actions and deeply remorseful so much, so he has apologized to us, his family, repeatedly for what has happened. He has lost sleep believing his family business will be bankrupt if he is not able to work it and the veterans, he employs will lose their job.

8. "Brandon's business is managed based on his sweat and labor and since the media named his as one of the rioters, Brandon has had work extra hard to get the trust of potential clients. Brandon is the sole income provider for this family and also cares for me and his elderly

mother.

9. "I am presently in the hospital for Covid with pneumonia, and I had every intention to be present in Washington, D.C. to speak on my son's behalf. I plead with the Court for mercy for my son and our family. I promise you he will never do this anything like this again. He regrets his actions and wishes to make amends.

10. "I thank you for your time, Judge, and you can reach me at 210-701-8063 if you need any other information."

Signed this 15 day of February, 2024.

Patrick W.
Signature of Affiant

SUBSCRIBED AND SWORN to before me on this 15 day of February, 2024, by Patrick Wayne Torres

Notary Public, State of Texas

KATHERINE SAENZ
NOTARY PUBLIC
STATE OF TEXAS
ID 134301325
EXP. 04-12-2027

Page 2 of 2

### EXHIBIT 3

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

BEFORE ME, the undersigned authority, on this day personally appeared MELODY BRADSHAW ("Affiant"), who being by me first duly sworn, stated the following under oath:

1. "My name is MELODY BRADSHAW, and I live at 7019 Ozona Cove, San Antonio, Texas 78253. I have personal knowledge of the facts stated in this Affidavit.

2. "I am BRANDON BRADSHAW's wife and life partner.

3. "I don't even know how to begin to tell the Court how deeply sorry Brandon is for his actions. As his wife, I hear him talk every day about how sorry he is for what he did, and I hear him asking God to forgive him for his actions every night. We have prayed on this for two years now.

4. "Besides being sorry for what he did, Brandon is ashamed. I know he took photos with police at the Capitol but that was because he was proud to be near them not because he was making fun of them or anything like that. It is hard to explain in words how much Brandon respects the law and the military and more importantly the principles upon which this country was built. If Brandon could pick his dream job, it would be a military service member serving in a combat zone or a police officer protecting and serving. Sadly, because of an injury to his hand, he did not qualify to serve. For that, I am personally grateful because he has remained safe with our family.

5. "Brandon and I have two young children together, BRANDON AVERY BRADSHAW II, who is 9 and BRENT ASHTON BRADSHAW, who is 1. We have taught them the importance of respecting others and cherishing life. Unfortunately, on January 6th, my husband displayed actions that were not in line with those teachings, and I know that he will forever have to explain his actions and the consequences that follow to our children.

6. "I am aware the prosecutor is requesting jail time for Brandon, but I am begging the Court to consider the following: the impact on our family, the reason behind his actions which were void of intent, and the impact on our community. Brandon is the sole provider of our family of four. Because we have small children, I am a stay-at-home mother and cannot survive without Brandon's income. Although Brandon appears cavalier in the photos with the Capitol police, he was proud and that could not be conveyed through the photos but since I know Brandon and his heart, he was proud and even told us he was proud to stand near the Capitol police. With regard to the impact Brandon's incarceration will have on the community, our business employs those people less fortunate than us and if he is unable to manage our business, not only will be affected but the workers he employs will be affected.

7. "It's difficult to explain how many lives Brandon touches on a daily basis because I

don't follow him around all day, but Brandon is good and kind and generous. But for this one stupid act, Brandon has a stellar reputation in the community. Brandon has centered his whole business around helping veterans and recovering addicts obtain employment in our community. Brandon gives members of our community a second chance at life and shows them there is hope at the other end of their struggles.

8. "Brandon also takes on construction jobs that assist the disadvantaged areas of San Antonio. Recently, Brandon has donated and installed playground material in the southside of San Antonio.

9. "All Brandon has ever wanted is to make his family proud and this charge has devastated him and or family. I am begging the Court to please not incarcerated Brandon. Brandon will spend the rest of his life attempting to make up for this grave error in judgement.

10. "I plead with the Court for mercy for my husband and our family and I humbly request that Brandon be punished with probation.

11. "I thank you for your time, Judge, in reading this."

Signed this 15 day of February, 2024.

_____
Signature of Affiant

SUBSCRIBED AND SWORN to before me on this 15 day of February, 2024, by Melody Bradshaw

_____
Notary Public, State of Texas

Page 2 of 2

**EXHIBIT 2**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

BEFORE ME, the undersigned authority, on this day personally appeared ANDREA LEE TORRES ("Affiant"), who being by me first duly sworn, stated the following under oath:

1. "My name is ANDREA LEE TORRES, and I live at 7535 Pipers Creek, San Antonio Texas, 78250. I have personal knowledge of the facts stated in this Affidavit.

2. "I am the mother of BRANDON BRADSHAW.

3. "I am so sincerely regretful that I asked my son to accompany me to Washington. He had no intention of going except I was going to drive alone, and he said I shouldn't go alone because it was dangerous. Because he feared for my safety, he said he would come with me since my husband could not.

4. "I know what Brandon did was wrong, our whole family knows what he did was wrong, but he had no intent to cause violence and I believe he got caught up with the crowd and wanted to see what was going on. Brandon doesn't have a mean bone in his body, and he grew up with great respect for authority specifically Veterans and the police. My father served in the military, and he helped to care for Brandon when he was little, and he instilled a respect for authority.

5. "I know that all the photos Brandon took with the Capitol police makes him appear like he is proud to be part of the mob, but the contrary is true. Brandon has such a love for the police and our country that he took those photos because he was proud of their service to our country and wanted people to know he was there supporting them in their duties.

6. "If I could go back to that fateful day, I would not have insisted that I wanted to go see the President's speech or the Capitol. But for my part, none of this would have happened. I wish I could fall on the sword for my son, but we all know he did wrong and for that he is truly sorry. Most especially, he is sorry for being part of the problem despite thinking he was helping.

7. "I know my son like no Judge, Prosecutor, or Authority could know him. He did not intend to break the law. He is an advocate for the underdog, always trying to help those less fortunate than us.

8. "I am aware the prosecutor is requesting jail time, but our family knows from the bottom of our hearts that Brandon doesn't need this punishment to deter him from breaking the law. Brandon's business and therefore his family have suffered as a result of his poor actions from the publicity.

9. "I wish you could see the son I raised because you would be certain, he is good, kind, and humble and deeply respects our laws. Has he at times embellished his military service? Yes,

and that is because he so deeply wanted to serve and wanted to make his family proud. Unfortunately, due to a pre-existing condition, he was removed from service despite his efforts to serve. This desire to serve is what prompted him to go see what was going on and to help stop the mob from hurting the officers. Was this dumb on his part? Absolutely, but he did not understand that his presence was just adding to the mob and not helping at that time.

10. "Brandon is the sole income provider for his family of four: his wife Melody, son Brent Ashton Bradshaw, age 1, and son, Brandon Avery Bradshaw II, age 9. Now knowing 1) that what he did was illegal and 2) that his family would be affected by his actions, Brandon would never do what he did. Even though I have told Brandon that I am to blame for taking him to D.C. that day, he has assured me it is his fault because he could have stayed at the bottom of the stairs at the Capitol with me, but his curiosity got the better of him. He has comforted me and reassured me he is the sole blame for the charges brought against him.

11. "Brandon has no criminal history and I ask the Court to consider this because this shows he is a rule follower and a good person. If Brandon were to be incarcerated, he would be unable to take care for his family or help me and my husband, who is hospitalized for Covid and pneumonia. He has lost sleep believing his family business will be bankrupt if he is not able to work it.

12. "I plead with the Court for mercy for my son. I promise you he will never do this anything like this again. He regrets his actions.

13. "I thank you for your time, Judge."

Signed this 15 day of February, 2024.

_____
Signature of Affiant

SUBSCRIBED AND SWORN to before me on this 15 day of February, 2024, by Andrea Lee Torres

_____
Notary Public, State of Texas

Page 2 of 2